[Civ. No. 8953. Second Appellate District, Division Two.—December 31, 1934.]

BLUE DIAMOND COMPANY (a Corporation), Appellant, v. ALEXANDER RICHARD GOLLOS et al., Defendants; BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION (a Corporation), Respondent.

O'Melveny, Tuller & Myers, Pierce Works and W. B. Carman, Jr., for Appellant.

Freston & Files, Ralph E. Lewis, Louis Ferrari and Edmund Nelson for Respondent.

STEPHENS, P. J.—Plaintiff, a building materials company, appeals from judgment in favor of respondent bank. An escrow had been started with the bank by defendant Gollos and one Reynolds, from whom the former was purchasing an apartment site. A sum of $47,500 remained unpaid on the purchase price. Gollos went to plaintiff and made certain representations concerning a projected building loan which he hoped to obtain and use for the erection of an apartment building. Plaintiff interested itself in the proposition, apparently with the idea that by extending its credit resources to Gollos it would receive the contract to supply the building materials for the structure and profit thereby.

On October 6, 1926, Gollos executed and delivered to plaintiff three promissory notes totaling $95,000 to be held

by the latter as security, and received in turn a letter from plaintiff agreeing to accept $47,500 in full payment of the same. Thereupon plaintiff borrowed $47,500 on a note executed to Lasker Finance Corporation and by it sold to Discount Corporation of America. Later plaintiff was obliged to and did pay this note. The proceeds of the loan by Lasker to plaintiff was delivered in the form of a check payable to the latter.

After 3 o'clock in the afternoon of October 7, 1926, one Windmueller, assistant credit manager of plaintiff, went to defendant bank and left with the stenographer, to be handed to the escrow officer, one Bander, two documents: (1) check $47,500 Lasker to plaintiff and specially indorsed by latter to the bank. (2) Letter of instructions to the bank concerning the Gollos-Reynolds escrow directing it to use the check when they hold for plaintiff various documents, including an assignment of the proceeds of mortgage for $200,000 to be placed on the property, an acceptance of the same by a specified surety company, an assurance by Lasker Corporation that it would pay the existing encumbrance on the property, a bond guaranteeing faithful performance of the building contract, an indemnity bond and a contract to purchase promptly materials to erect the building on the property and closing "Unless you shall have the above for us within ten days from the date, time being strictly the essence hereof, you will hold the within note for our further instructions. Yours very truly, Blue Diamond Company by Black, Hammack & Black.'' The stenographer accepted the check and declined the letter of instructions on the ground that plaintiff was not a party to the escrow. Both documents were left at the bank, however, with that limitation, since the escrow officer was not personally present. The next morning the escrow officer phoned Windmueller and Gollos, informing them that the bank did not consider plaintiff a party to the escrow and that Gollos would have to place the amount above indicated in escrow that day, October 8, 1926, or the escrow would be concluded and Gollos would lose the property.

Thereupon Windmueller wrote a letter to the bank and had it delivered. It was as follows: "Superseding our escrow instructions handed to you October 7th relative to the use of our check in the sum of $47,500 you are hereby au-

thorized to use this check for the sole purpose of paying off the balance due on the property covered by this escrow and only when you can show this propertpy in the name of Alexander R. Gollos free and clear of all encumbrances. Otherwise, our escrow instructions are to be followed in every detail. Blue Diamond Company, by Arthur E. Windmueller, Assistant Credit Manager.'' The same day Lasker delivered a cashier's check for $47,500 to the bank and received from it the check drawn by Lasker to plaintiff and indorsed by the latter to the bank and Lasker canceled the same.

The escrow was closed. The money was paid to Reynolds. Gollos got title to the property and continued his relations with plaintiff until prior to the time he was adjudicated bankrupt in February, 1929.

On December 21, 1926, plaintiff filed this action against the bank to recover the amount of the check in question. The complaint and summons were served on the bank January 30, 1928. There is no assertion by the bank that it complied with any of the requirements of the above quoted letter, signed by Black, Hammack & Black.

█ Plaintiff complains that the delivery of the check by Lasker to plaintiff in exchange for the cashier's check was unauthorized and improper. It is obvious, however, that the act of the bank in accepting such a cashier's check was in effect the same as cashing the first check. There is no rule which would preclude the bank from presenting the check to its maker and receiving the cash or its equivalent in lieu of the check thus presented and certainly no detriment could be shown by such a substitution.

█ The evidence amply supports the finding of the trial court that Windmueller was the duly authorized agent and representative of plaintiff in handling the transaction with the bank, the further finding that the second letter above quoted superseded the earlier letter which had not been accepted by the bank, and that the bank applied the proceeds of the check in conformity with the conditions contained in the second letter. Plaintiff suggests that the last sentence in the second letter: ''Otherwise, our escrow instructions are to be followed in every detail'' should be construed as embodying in the second letter all the provisions of the first. Since the earlier letter had been expressly rejected by

the bank, and since the second letter used the word "superseding" rather than "supplementing", the court properly concluded that the terms of the first letter did not bind the bank and the second letter superseded it in all respects. "Otherwise" may be used with propriety in the sense "under any other conditions" and such a use appears reasonable here.

Our attention is directed to a further finding relating to the dealings between plaintiff and Gollos during the thirteen months' time intervening between the filing of this suit and the service of the complaint. It appears unnecessary to discuss its legal implications but the facts confirm the correctness of the trial court's conclusions on the other matters as above outlined. When the suit was filed plaintiffs attached the property which had been in escrow, and which then stood in the name of Gollos free and clear of encumbrance.

Plaintiff agreed to release the attachment so that Gollos could put a first trust deed for $200,000 on the property to secure money to erect a building. Gollos agreed that he owed plaintiff $47,500, plus interest and attorneys' fees, and gave the latter an attachment bond signed by Gollos but without sureties. Then Gollos executed two notes for $60,-000 each, one payable to plaintiff and the other to another party, executed a second trust deed for $120,000 to secure the said notes and deposited it together with note to plaintiff for $60,000 with plaintiff to secure the attachment bond. It was agreed that plaintiff was to furnish $25,000 worth of building materials to be paid for out of the proceeds of the first trust deed loan.

When the attachment had been levied plaintiff was fully secured by virtue of the fact that Gollos had clear title to the attached property which was the identical property that had been obtained through the escrow. Plaintiff at the time of the escrow had placed the money in the hands of the bank with directions to secure clear title for Gollos. The latter got clear title to the property and plaintiff filed suit attaching it while the title was still in that condition. Being thus secured, the plaintiff thereafter relinquished its superior rights thus acquired and accepted a subordinate security, with the expectation of making a profit from the sale of building materials. The realization of this hope unfortunately fell far short of plaintiff's expectations.

Since .the findings support the judgment and are themselves supported by the evidence, it is not within the province of an appellate court to substitute another determination for that of the trial court.

Judgment affirmed.

Crail, J., concurred.

This opinion was prepared by Scott, J., *pro tem.*

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 25, 1935.